IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,
                    Plaintiff,

            vs.

JAYDEN C. PRENTICE,
                    Defendant.

CASE NO: **4:21CR3124**

**DETENTION ORDER**

On the government's motion, the court held a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f).   The court concludes the defendant must be detained.

There is a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the defendant's appearance at court proceedings and the safety of the community because there is probable cause to believe the defendant committed a firearms crime <u>and</u> a drug crime under the Controlled Substances Act (21 U.S.C. § 801 et seq.), for which the defendant could be required to serve ten or more years in prison.  The defendant has not rebutted this presumption.

Based on the evidence presented and information of record, the court finds by clear and convincing evidence that the defendant's release would pose a risk of harm to the public. The court's determination is based on the following:

On May 3, 2021, Defendant was arrested for receipt and possession of a stolen firearm, a felony, in Saline County, Nebraska. He was allowed to post bail and was released on June 3, 2021. Thereafter, Defendant continued his daily use of marijuana.

On August 2, 2021, while out on bond, Defendant (using a text message) arranged to sell one-half pound of marijuana, the sale to occur in the Edgewood Shopping Center, in Lincoln, Nebraska. Defendant was driven to the public parking

lot between the Marcus Theatre and Target at the Edgewood Shopping Center. Co-defendant Christopher Duncan was the driver; Defendant was in the front passenger seat; and co-defendant Riley Mills was a backseat passenger. The sale was to occur during the theatre and Target business hours and near private homes adjacent to the Center's parking lot.

Defendant and Duncan arrived at the location with a substantial amount of money in their pockets. A revolver (Taurus 9 mm handgun) and a half-pound of marijuana were located near Defendant's feet on the front passenger floorboard of the vehicle. A loaded Draco firearm and substantial amounts of cash were located in the area where Mills was seated. Additional marijuana was found in the vehicle, as well as other pills with street value.

When the buyer arrived, shots were fired. Defendant was shot in the jaw; Duncan was shot in the legs. Upon arrival at the hospital, Defendant had cocaine in his system. In addition to the two firearms in the vehicle Defendant occupied, a 45 mm handgun was found in the parking lot.

Defendant was released from the hospital three and one hapf weeks later, While additional medical treatment (physical and speech therapy) is anticipated, Defendant is now able to communicate, and he is mobile. He is able to hang out with his girlfriend, and go bowling and to movies.

Defendant requested release, proposing his mother, Amanda Prentice, as a third-party custodian. Ms. Prentiss' criminal history includes a felony conviction for "Aiding Consummation of Felony" and a conviction for using marijuana. She testified that she did not post the $5000 (10% bond of $50,000) for the Saline County case. She could not explain where Defendant received the money for that bond. Defendant has not been employed for the past two years.

Amanda Prentiss states her son will follow any instructions or orders she gives him. But she also testified that she knew her son was using marijuana before the shooting occurred. The clear implication is that she either did not tell Defendant

to quit using drugs, or he did not listen to her instruction. And even though she knew he was using marijuana, she did not place him in drug treatment—a step she could have taken since he is only 19.

When asked about whether the defendant voluntarily provided his DNA to law enforcement, she stated it was voluntary, but only because law enforcement threatened Defendant with a warrant. Compared to her cooperative tone when answering defense counsel's questions, Ms. Prentiss' tone on cross-examination indicated an irritation and bitterness indicative of casting her son as an innocent victim of the crime, rather than the catalyst behind it. Her rather dramatic change when responding to the prosecutor's questions raises serious concerns that she would enable her son rather than report his violations to the court if Defendant is released.

Based on the foregoing, I conclude that release to Amanda Prentiss as a third-party custodian, with or without electronic monitoring, will not sufficiently ameliorate the risk of harm to the public if he is released, and I know of no other conditions that will.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel.  On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated October 15, 2021.  BY THE COURT:

_s/ Cheryl R. Zwart_
United States Magistrate Judge

3